# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| In the Matter of the Trusts established under the Pooling and Servicing Agreements relating to the Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-C30; COBALT CMBS Commercial Mortgage Trust 2007-C2 Commercial Mortgage Pass-Through Certificates, Series 2007-C2; Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-C31; ML-CFC Commercial Mortgage Trust 2007-5 Commercial Mortgage Pass-Through Certificates, Series 2007-5; and ML-CFC Commercial Mortgage Trust 2007-6 Commercial Mortgage Pass-Through Certificates, Series 2007-6 | Civil No. 16-2487 (DWF/KMM)<br><br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

_____

Ana Chilingarishvili, Esq., James F. Killian, Esq., and Michael C. McCarthy, Esq., Maslon LLP; and Kevin J. Biron, Esq., and Michael Stephan Kraut, Esq., Morgan, Lewis & Bockius LLP; counsel for Petitioner U.S. Bank National Association.

George A Kielman, Esq., and Scott L. Walker, Esq., Federal Home Loan Mortgage Corporation; Lindsey A. Davis, Esq., Zelle Hoffman Voelbel & Mason LLP; and Michael Steven Schuster, Esq., and Neil R. Lieberman, Esq., Holwell Shuster & Goldberg LLP; counsel for Respondent Federal Home Loan Mortgage Corporation.

Barbara P. Berens, Esq., and Erin K. Fogarty Lisle, Esq., Berens & Miller, PA; and Christopher P. Johnson, Esq., and Uri A. Itkin, Esq., Kasowitz, Benson, Torres & Friedman LLP; counsel for Respondent Federal National Mortgage Association.

Adam M. Nathe, Esq., and Norman M. Abramson, Esq., Gray Plant Mooty; Lawrence M. Rolnick, Esq., Michael J. Hampson, Esq., and Thomas Edward Redburn, Jr., Esq., Lowenstein Sandler LLP; counsel for Respondent Appaloosa Investment L.P.I. and Palomino Master Ltd.

Colleen M. Mallon, Esq., and Gregory A. Cross, Esq., Venable LLP, David R. Crosby, Esq., and Thomas F. Nelson, Esq., Stinson Leonard Street LLP, counsel for Respondent CWCapital Asset Management LLC.

Charles N. Nauen, Esq., and David J. Zoll, Esq., Lockridge Grindal Nauen P.L.L.P.; and Howard S. Koh, Esq., and Stephen B. Meister, Esq., Meister, Seeling & Fein LLP; counsel for Respondent PSW NYC LLC.

_____

## INTRODUCTION

Petitioner U.S. Bank National Association ("U.S. Bank" or "Trustee"), acting in its capacity as Trustee, initiated this trust instruction proceeding under the Minnesota Trust Code by filing a Petition in Minnesota state court.  Through its Petition, the Trustee seeks judicial instruction concerning the proper interpretation of the trusts' governing agreements.  As explained below, five other entities appeared in state court in various capacities regarding the Petition, including:  Appaloosa Investment, L.P., I and Palomino Fund Ltd. ("Appaloosa"), Federal National Mortgage Association ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), CWCapital Asset Management LLC ("CWCAM"), and PSW NYC LLC ("PSW").  CWCAM filed a Motion to Dismiss on jurisdictional grounds, and the state court denied the motion. Freddie Mac thereafter removed the proceeding to this Court.  The matter is currently before the Court on:  (1) CWCAM's Motion to Rehear CWCAM's Motion to Dismiss Under Fed. R. Civ. P. 12(b) or Alternatively, to Adopt the State Court Order (Doc. No. 30); (2) Appaloosa's Motion to Remand (Doc. No. 46); and (3) Freddie Mac's Motion to Transfer (Doc. No. 53).  For the reasons discussed below, the Court reserves

determination on the Motion to Rehear, denies the Motion to Remand, and grants the

Motion to Transfer.

## BACKGROUND

U.S. Bank serves as Trustee for five trusts governed by the pooling and servicing

agreements ("PSAs") for which it seeks judicial instruction in this matter.  The relevant

trusts (collectively, the "Trusts") are designated as follows:

> (1) Wachovia Bank Commercial Mortgage Trust Commercial Mortgage
>     Pass-Through Certificates, Series 2007-C30 (the "C30 Trust");
> (2) COBALT CMBS Commercial Mortgage Trust 2007-C2 Commercial
>     Mortgage Pass-Through Certificates, Series 2007-C2;
> (3) Wachovia Bank Commercial Mortgage Trust Commercial Mortgage
>     Pass-Through Certificates, Series 2007-C31;
> (4) ML-CFC Commercial Mortgage Trust 2007-5 Commercial Mortgage
>     Pass-Through Certificates, Series 2007-5; and
> (5) ML-CFC Commercial Mortgage Trust 2007-6 Commercial Mortgage
>     Pass-Through Certificates, Series 2007-6.

(Doc. No. 1 ("Notice of Removal") ¶ 19, Ex. A ("Pet.") at 1-2.)  Wells Fargo Bank, N.A.

("Wells Fargo") serves as Master Servicer for the Trusts, and CWCAM serves as Special

Servicer.[1]  (Pet. at 1-2, Ex. A; Doc. No. 56 ("Davis Decl.") ¶ 4, Ex. B ("Iannarone Aff.")

---

[1]     As articulated by the Trustee in its Petition seeking judicial instruction, the
following background summarizes the general character of the Trusts and the governing
PSAs:

> Interests in the Certificates issued by the Trusts are commonly referred to
> as commercial mortgage-backed securities ("CMBS").  In the type of
> CMBS transaction at issue here, an entity, called the "depositor," deposits a
> pool of mortgage loans backed by mortgages on commercial real estate into
> a trust in exchange for certificates.  The depositor (or an underwriter) then
> sells the certificates, which entitle holders to receive cash flows from the
> trust assets.  Pursuant to the pooling and servicing agreement for the CMBS
> transaction, a "master servicer" and a "special servicer" may be appointed

(Footnote Continued on Next Page)

¶ 7.)  The PSA for the C30 Trust was entered into on March 1, 2007, by and among

Wachovia Commercial Mortgage Securities, Inc., as Depositor; Wachovia Bank,

National Association, as Master Servicer; CWCAM, as Special Servicer; and

Wells Fargo Bank, N.A., as the original Trustee.  (Pet. at 1-2.)  The PSAs are governed

by New York law.  (*Id.* ¶ 24.)

The Trustee seeks judicial instruction regarding a disputed interpretation over the

proper allocation of proceeds from the sale of a significant trust asset—a loan secured by

a mortgage on the Peter Cooper Village and Stuyvesant Town property in New York,

New York (the "Property" or "Stuy Town").  (*Id.* at 1-2, ¶ 2.)  The Property is New York

City's largest residential development.  (Iannarone Aff. ¶ 14.)  A $3 billion senior loan

(the "Senior Loan") secured by a mortgage on the Property was divided into six

promissory notes sold to the Trusts.  (Pet. ¶¶ 20, 22.)  On March 12, 2007, a Co-Lender

Agreement was entered into by and among Wachovia Bank, National Association and

Merrill Lynch Mortgage Lending, Inc. establishing a "Lead Lender" on the Senior Loan

with the right to administer the Senior Loan and enforce the loans on behalf of all of the

Trusts.  (*Id.* ¶ 26 & n.4; *see also* Doc. No. 94 ("Davis Decl. III") ¶ 3, Ex. B ("Co-Lender

---

(Footnote Continued From Previous Page)
by the transaction sponsor to service the mortgage loans, including by
collecting payments on the mortgage loans and, upon borrower default,
enforcing the terms of the loan, which may include foreclosure on the
commercial real estate.

(Pet. ¶ 19.)

Agreement").)  According to the Petition, the C30 Trust holds the rights of the Lead

Lender.  (*Id.* ¶ 26.)

Beginning in November 2009, CWCAM administered the Senior Loan on the

Property as Special Servicer for the C30 Trust from offices in New York and Maryland.

(*Id.* ¶ 28; Iannarone Aff. ¶¶ 9-10.)  Following default by the borrowers, CWCAM

foreclosed on the Property and eventually obtained title to the Property via a deed in lieu

of foreclosure in 2014.[2]  (Pet. ¶¶ 4, 29-33.)  In October 2015, it was announced that the

Property was to be sold for approximately $5.3 billion.  (*Id.* ¶ 36.)  CWCAM, as Special

Servicer for the C30 Trust, claimed that it was entitled to more than $500 million

constituting Penalty Interest from the sale of the Property as compensation pursuant to

the PSA.  (*Id.* ¶ 7; *see also* Doc. No. 33 ("Crosby Aff.") ¶ 9, Ex. G at 5-6.)  Certain

investors, namely Appaloosa, have argued that these amounts belong to the Trusts as

Gain-on-Sale Proceeds.  (Pet. ¶ 8.)

On November 12, 2015, Appaloosa filed a lawsuit concerning the Trusts in

New York State Court, seeking a preliminary injunction against CWCAM to enforce its

---

[2]      CWCAM's foreclosure action resulting in the Foreclosure Judgment referenced in
the Petition was filed in the United States District Court for the Southern District of
New York with the following caption:  *Bank of America, N.A. v. PCV ST Owner LP*,
Index No. 10-cv-1178 (S.D.N.Y.).  (Pet. ¶ 30.)  As described in the Petition, the effect of
the Foreclosure Judgment on the calculation of Penalty Interest is a disputed issue
between Appaloosa and CWCAM for which the Trustee seeks judicial instruction.  (*See
id.* ¶¶ 51-55.)

interpretation of the proper distribution of sale proceeds.[3]  (*Id.* ¶¶ 56-58.)  Appaloosa's motion for a preliminary injunction was denied for lack of standing, and Appaloosa voluntarily discontinued its lawsuit.  (*Id.* ¶ 58.)  Thereafter, Appaloosa requested that the Trustee take action to enforce the PSA and threatened litigation against the Trustee if it failed to take steps necessary to preserve and protect the Trusts.  (*Id.* ¶ 59.)

On December 18, 2015, the Property was sold; the sale negotiations and closing took place in New York.  (Iannarone Aff. ¶ 17.)  CWCAM thereafter allocated the proceeds from its offices in New York.  (*Id.* ¶ 18.)  CWCAM has retained the portion of the proceeds representing Penalty Interest based on its interpretation of the PSA.  (*Id.* ¶ 19.)

On December 17, 2015, in light of the competing interpretations regarding the distribution of the sale proceeds, the Trustee filed a Petition for Instructions in state court in Ramsey County, Minnesota ("State Court") pursuant to the Minnesota Trust Code.[4]  (*See generally* Pet.)  Specifically, the Petition posed two discrete issues for judicial resolution:

---

[3]     Appaloosa's lawsuit against CWCAM had the following caption:  *Appaloosa Investment L.P. I, et al. v. CWCapital Asset Management LLC, et al.*, Index No. 653741/2015 (N.Y. Cnty.).  (*See* Pet. ¶ 56.)

[4]     The Petition was filed pursuant to Minn. Stat. § 501B.16.  (Pet. at 1.)  The Minnesota Trust Code has since been recodified.  *See* 2015 Minn. Sess. Law Serv. Ch. 5 (S.F. 578) (West).  The relevant provisions now appear in Minnesota Statutes Chapter 501C, particularly Minn. Stat. §§ 501C.0201-.0208 which govern judicial proceedings. *Id.*  These provisions apply retroactively to proceedings commenced before January 1, 2016 unless the court determines that their application "would substantially interfere with the effective conduct of the judicial proceedings or unfairly prejudice the rights of the parties."  Minn. Stat. § 501C.1304.

A.     Can any sale proceeds from the Property be properly allocated to pay any "penalty interest (arising out of a default)" that accrued on the REO Loans relating to the Property?

B.     What amount of "penalty interest (arising out of a default)" accrued on the REO Loans relating to the Property?

(*Id.* at 10-13.)  Accordingly, in its Request for Relief, the Trustee sought an Order from the Court, in relevant part, as follows:

(i)     Instructing the Trustee, beneficiaries, and any other interested parties as to the amount of the Disputed Funds, if any, that constitute Penalty Interest that CWCAM is entitled to receive as additional servicing compensation, with respect to each Trust;

(ii)     Instructing the Trustee, beneficiaries, and any other interested parties as to the amount of the Disputed Funds, if any, that constitute Gain-on-Sale Proceeds that must be deposited into the Gain-on-Sale Reserve Account, with respect to each Trust . . .

(*Id.* at Request for Relief ¶ C.)

On December 18, 2015, the State Court issued an Order setting a February 8, 2016 hearing regarding the Petition.  (Doc. No. 84 ("Davis Decl. II") ¶ 3, Ex. B ("COBALT 2007-C2, WBCMT 2007-C31, MLCFC 2007-5, and MLCFC 2007-6 Trusts Notice") at Appendix II.)  The Order directed the Trustee to send copies of the Order and Petition to all Certificateholders and the parties to the PSAs, including the Special Servicer, and it provided the following regarding the rights of parties in interest:

5.     Parties in interest may object to the Petition, or any of the relief being sought therein, by filing a memorandum of law setting forth their respective positions regarding the issues presented by the Petition . . . not later than five (5) days before the hearing date set forth above.

6.     The parties in interest are hereby referred to the Petition provided to them and on file in the office of the Court Administrator for a specification of the matters to be considered at said hearing.

(*See id.*)  On or about December 29, 2015, the Trustee notified the Certificateholders of the State Court proceeding, enclosing a copy of the Petition and the December 18, 2015 State Court Order.  (Doc. No. 50 ("Bolin Decl.") ¶ 6, Ex. A ("C30 Trust Notice"); COBALT 2007-C2, WBCMT 2007-C31, MLCFC 2007-5, and MLCFC 2007-6 Trusts Notice.)  Appaloosa, Fannie Mae, and Freddie Mac are all Certificateholders in one or more of the Trusts.  (Bolin Decl. ¶ 2; Doc. No. 49 ("Abramson Decl.") ¶ 12, Ex. J at 3; Doc. No. 85 ("Walker Decl.") ¶¶ 3-4.)

On February 3, 2016, Appaloosa filed an Objection and Answer to the Petition, asserting its position regarding the proper characterization of the disputed funds.  (Doc. No. 76 ("Biron Decl.") ¶ 2, Ex. 1.)  On April 28, 2016, Fannie Mae filed an Objection to the Petition, challenging Appaloosa's interpretation of "Gain-on-Sale" Proceeds because it would divert tens of millions of dollars in sales proceeds from senior Certificateholders to junior Certificateholders.  (Abramson Decl. ¶ 12, Ex. J.)  On May 6, 2016, Freddie Mac filed an objection on the same basis.[5]  (Abramson Decl. ¶ 13, Ex. K.)

On February 24, 2016, CWCAM filed a Motion to Dismiss the Petition, arguing that (1) the State Court lacked *in rem* jurisdiction over the Trusts, (2) the Trustee had no standing, (3) the State Court lacked personal jurisdiction over CWCAM, (4) the Court

---

[5]     On February 1, 2016, PSW submitted an Objection to the Petition.  (Doc. No. 76 ("Biron Decl.") ¶ 3, Ex. 2.)  PSW asked the State Court to consider its breach-of-contract claims against CWCAM which were then being litigated in New York state court, to dismiss the Petition so that all claims could be litigated in New York, or to stay the State Court proceeding until the New York case was resolved.  (*Id.*)  On October 31, 2016, PSW's claims in the New York case were dismissed with prejudice.  (Doc. No. 99.)  The substance of PSW's objection to the Trustee's Petition is not relevant to the Court's consideration of the present motions.

should dismiss based on *forum non conveniens* because New York would be a proper alternative forum, and (5) the action should be dismissed as moot due to the completed sale of the Property. (*See generally* Crosby Aff. ¶¶ 4-5, Exs. B, C.) The Trustee and Appaloosa opposed the Motion. (*See* Crosby Aff. ¶¶ 9, 14, Exs. G, L.) On July 19, 2016, the State Court denied CWCAM's Motion to Dismiss, finding that it could properly exercise *in rem* jurisdiction over the Trusts pursuant to the Minnesota Trust Code, that it was not necessary for the State Court to exercise personal jurisdiction over CWCAM in order to resolve the Petition, and that Minnesota was a proper forum. (Crosby Aff. ¶ 19, Ex. Q.)

Freddie Mac removed the action to this Court on July 22, 2016, invoking 12 U.S.C. § 1452(f)(2) and 28 U.S.C. § 1331 on the basis of federal question jurisdiction. (Doc. No. 1.) According to Freddie Mac, at the time of removal, no discovery had taken place in State Court, and the State Court had not yet addressed the merits of the Petition or any Objections. (*Id.* ¶ 11.) The following motions were subsequently filed in this matter: (1) Motion to Rehear CWCAM's Motion to Dismiss Under Fed. R. Civ. P. 12(b) or, Alternatively, to Adopt the State Court Order by CWCAM (Doc. No. 30); (2) Motion to Remand by Appaloosa (Doc. No. 46); and (3) Motion to Transfer by Freddie Mac (Doc. No. 53). The matter is currently before the Court on these three motions.

## DISCUSSION

Appaloosa argues that Freddie Mac had no basis to properly remove this proceeding to federal court and that this Court consequently lacks jurisdiction over the matter. (Doc. No. 46.) Freddie Mac and CWCAM have opposed Appaloosa's Motion to

Remand.  According to these parties, Congress plainly authorized Freddie Mac to remove any case in which it is "a party," including this trust instruction proceeding initiated in state court.  U.S. Bank, PSW, and Fannie Mae take no position on Appaloosa's Motion.

Freddie Mac asks the Court to transfer this matter to the United States District Court for the Southern District of New York, given the lack of any meaningful connection between this forum and the facts underlying this matter.  (Doc. No. 53.) Appaloosa opposes the Motion to Transfer.  No other parties take a position on Freddie Mac's motion.

CWCAM requests a rehearing on its Motion to Dismiss the Trustee's Petition under Federal Rule of Civil Procedure 12(b).  (*See* Doc. No. 30.)  Should the Court decline CWCAM's request, CWCAM asks the Court to incorporate the State Court Motion to Dismiss and associated briefing into the record in this case and to adopt the July 19, 2016 State Court Order.  (*See id.*)  PSW, U.S. Bank, and Appaloosa oppose CWCAM's Motion.  Freddie Mac and Fannie Mae take no position on CWCAM's motion.

Because Appaloosa's Motion to Remand presents a threshold question regarding the Court's jurisdiction, the Court will address this motion first.  *See Greenpond S., LLC v. Gen. Elec. Capital Corp.*, Civ. No. 14-1214, 2015 WL 225227, at *1 (D. Minn. Jan. 16, 2015).  Next, the Court will evaluate Freddie Mac's Motion to Transfer.  Finally, the Court will address CWCAM's request for rehearing or adoption of the State Court Order.

## I.      Appaloosa's Motion to Remand

### A.      Legal Standard

A party opposing removal may bring a motion requesting that the federal court remand the case back to state court.  28 U.S.C. § 1447(c).  The district court shall remand the case back to state court if it determines that the court lacks subject matter jurisdiction. *Id.*; *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 134 (2005).  On a motion to remand, the party seeking removal and opposing remand bears the burden of demonstrating federal jurisdiction by a preponderance of the evidence.  *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir.1993).  The federal court should resolve any doubt as to the propriety of removal in favor of remand.  *Prempro*, 591 F.3d at 620; *Bus. Men's Assur.*, 992 F.2d at 183.  "In addition to the notice of removal and its exhibits, to determine whether there is jurisdiction, the court may consider documents submitted after the notice of removal as well as those attached to subsequent motions."  *Guggenberger v. Starkey Labs., Inc.*, Civ. No. 16-2021, 2016 WL 7479542, at *5 (D. Minn. Dec. 29, 2016).

### B.      Removal by Freddie Mac

Freddie Mac is a federally chartered corporation established under the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. §§ 1451-59.  Pursuant to its statutory charter, Freddie Mac is "authorized to purchase, and make commitments to purchase, residential mortgages."  12 U.S.C. § 1454(a)(1).  It may also "hold and deal with, and sell or otherwise dispose of . . . any such mortgage or interest therein."  *Id.*  Its involvement in

this litigation arises out of such congressionally authorized investment activity. (*See* Walker Decl. ¶¶ 3-4.)

Freddie Mac filed a Notice of Removal as a "Party in Interest" in this matter, citing 12 U.S.C. § 1452(f)(3), 28 U.S.C. § 1442, and 28 U.S.C. § 1446. Freddie Mac asserted that "[r]emoval is made pursuant to 12 U.S.C. § 1452(f)(2) and 28 U.S.C. § 1331 on the basis of federal question jurisdiction." (Notice of Removal at 1.) According to Freddie Mac, it has a "significant financial stake" in the State Court proceeding because it could lose "tens of millions of dollars" if the Petition is resolved consistent with Appaloosa's interpretation of the PSAs. (*Id.* at 4.) This financial stake, Freddie Mac suggests, gives it standing to participate in the State Court trust instruction proceeding as an "interested person" or "party in interest" under Minn. Stat. § 501C.0201. Thus, Freddie Mac contends it is a "party" for purposes of interpreting 12 U.S.C. § 1452. In Freddie Mac's view, this status grants the Court federal-question jurisdiction under 28 U.S.C. § 1331 pursuant to 12 U.S.C. § 1452(f)(2) which provides that "all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions." Similarly, Freddie asserts that its status as a party gives it the power to remove the action pursuant to 12 U.S.C. § 1452(f)(3) which provides that "any civil . . . action . . . to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation." Freddie Mac also asserts its right to remove as a deemed agency under 28 U.S.C. § 1442(a) pursuant to 12 U.S.C. § 1452(f)(1) and contends that it may remove the matter on this basis without the consent of any other parties.

12

Appaloosa seeks remand to State Court, arguing that Freddie Mac has no right to remove this *in rem* trust instruction proceeding as a party in interest.  Pointing to four recent federal district court cases addressing Freddie Mac's removal rights under 12 U.S.C. § 1452, Appaloosa asks this Court to hold that Freddie Mac may only remove cases in which it is a defendant.  Alternatively, Appaloosa argues that even if Freddie Mac's removal right is not limited to when Freddie Mac is a defendant, then it should not apply in this case because the State Court proceeding is not "against" Freddie Mac. Finally, Appaloosa contends that the general policies underlying removal are inapplicable in this case, making it improper for the Court to exercise its limited jurisdiction over the matter.

Freddie Mac and CWCAM oppose Appaloosa's Motion to Remand and assert that the Court may properly exercise its jurisdiction over the Trustee's Petition.  Primarily, they urge the Court to adopt the statute's unambiguous plain language and hold that 12 U.S.C. § 1452's reference to "a party" means any party, including the parties in interest in this *in rem* trust instruction proceeding.  Freddie Mac and CWCAM also direct the Court to caselaw interpreting parallel language in removal statutes applicable to the Federal Deposit Insurance Corporation ("FDIC"), Federal Savings and Loan Insurance Corporation ("FSLIC"), and Resolution Trust Corporation ("RTC") to permit removal regardless of party alignment.  Beyond the statute's plain text, Freddie Mac and CWCAM also argue that the legislative history supports removal of any case in which Freddie Mac "is involved."  Finally, they assert that 28 U.S.C. § 1441's general removal provision and 28 U.S.C. § 1442's agency removal provision further support removal here.

13

### 1.    Plain Language

"The jurisdiction of the lower federal courts is entirely a creature of statute.  So is the privilege of removal from a state court to a federal court." *Cont'l Cablevision of St. Paul, Inc. v. U.S. Postal Serv.*, 945 F.2d 1434, 1435 (8th Cir. 1991).  Thus, Appaloosa's motion presents two straightforward questions of statutory interpretation:  (1) whether there is a basis for the Court to exercise jurisdiction over this matter; and (2) whether Freddie Mac had the privilege to remove.  *See id.*  In this case, the relevant provisions of Freddie Mac's charter contained in 12 U.S.C. § 1452(f) plainly answer both questions in the affirmative.

Numerous courts, including the Eighth Circuit and this District, have read 12 U.S.C. § 1452(f) to unambiguously confer federal question jurisdiction and broad removal power to Freddie Mac in any case in which it is a party.  *See, e.g.*, *Lackey v. Wells Fargo Bank, N.A.*, 747 F.3d 1033, 1035 n.2 (8th Cir. 2014) ("Because Freddie Mac is a party to this case, the district court had original jurisdiction pursuant to 12 U.S.C. § 1452(f)."); *Anderson v. CitiMortgage, Inc.*, 519 F. App'x 415, 416 (8th Cir. 2013) ("Section 1452(f) provides that the Federal Home Loan Mortgage Corporation . . . may remove any civil action in which it is a party.").  In specific reference to Freddie Mac's removal right, another judge in this District has stated:

> Freddie Mac has the unfettered right to remove to federal court any lawsuit in which it is involved. 12 U.S.C. § 1452(f).  The statute is unqualified.  It provides that, "[n]otwithstanding . . . *any other provision of law, . . . any civil or other action* . . . in a court of a State . . . to which [Freddie Mac] is a party may at any time before the trial thereof be removed by [Freddie Mac] . . . to the district court of the United States . . . ."  12 U.S.C. § 1452(f)(3) (emphases added).

*Pope v. Fed. Home Loan Mortg. Corp.*, Civ. No. 12-3094, 2013 WL 2251001, at *2 (D. Minn. May 22, 2013), *aff'd*, 561 F. App'x 569 (8th Cir. 2014). Although none of these cases involved the specific question presented here—whether Freddie Mac can properly remove as a party in interest in an *in rem* trust instruction proceeding—these courts' clear and consistent application of 12 U.S.C. § 1452's plain meaning persuade the Court that it is proper to similarly apply the unambiguous statutory language in this case.

To determine 12 U.S.C. § 1452's proper application in this proceeding, the Court begins with the statute's plain language. *See United States v. Behrens*, 644 F.3d 754, 755 (8th Cir. 2011). Where the relevant statutory provision is not ambiguous—that is, "not reasonably susceptible to more than one interpretation"—the court should apply the plain language unless it would "produce a result demonstrably at odds with the intentions of its drafters." *United States v. Jungers*, 702 F.3d 1066, 1069 (8th Cir. 2013) (quoting *Contemp. Indus. Corp. v. Frost*, 564 F.3d 981, 985 (8th Cir. 2009)). The court should not simply consider "the bare meaning of the critical word or phrase" but must "look to the provisions of the whole law, and to its object and policy." *Id.* at 1069-70 (internal quotation marks and citations omitted). "[I]f the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Behrens*, 644 F.3d at 755 (quoting *United States v. McAllister*, 225 F.3d 982, 986 (8th Cir. 2000)).

Consideration of Freddie Mac's right to remove this matter requires the Court to construe the following provisions in Freddie Mac's governing charter:

> Notwithstanding section 1349 of Title 28 or any other provision of law,
>
> (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such Title 28;
>
> (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and
>
> (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending, or, if there is no such district court, to the district court of the United States for the district in which the principal office of the Corporation is located, by following any procedure for removal of causes in effect at the time of such removal.

12 U.S.C. § 1452(f).[6]

　　　To understand the plain meaning of this statute, the Court considers the statute as a whole and imports the relevant provisions of the other statutes cross-referenced therein. The first subsection, 28 U.S.C. § 1452(f)(1), grants Freddie Mac the deemed status of an agency for purposes of 28 U.S.C. §§ 1345 and 1442.[7]  28 U.S.C. § 1345 gives federal

---

[6]　　Within the statute, "the Corporation" refers to Freddie Mac.  *See* 12 U.S.C. § 1451(b).

[7]　　Before the three operative subsections, the statute begins "Notwithstanding section 1349 of Title 28 or any other provision of law . . . ."  *See* 12 U.S.C. § 1452(f). According to 28 U.S.C. § 1349, "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."  Appaloosa directs the Court to Freddie Mac's 2015 Form 10-K Annual Report to support that Freddie Mac is a publicly-traded company and not majority owned by the United States.  (*See* Doc. No. 48 at 17 (citing Abramson Decl. ¶ 14, Ex. L at 279).)

(Footnote Continued on Next Page)

district courts "original jurisdiction of all civil actions, suits, or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."  28 U.S.C. § 1442 provides for removal of "[a] civil action . . . commenced in a State court and that is against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ."  Finally, the statute contains an implicit cross-reference to 28 U.S.C. § 1446 based on subsection (f)(3)'s reference to "any procedure for removal of causes in effect at the time of such removal."  28 U.S.C. § 1446 provides the general procedures for removal by "[a] defendant or defendants desiring to remove any civil action from a State court," including that such removal shall be made within thirty days of service.

Taken together, subsection (f)(1) gives federal district courts jurisdiction over civil actions commenced by Freddie Mac and permits it to remove actions "against or directed to" Freddie Mac.  Subsection (f)(2) establishes federal question jurisdiction in "all civil actions to which the Corporation is a party."  Finally, subsection (f)(3) provides special removal authority, including that Freddie Mac can remove "any civil or other action, case

---

(Footnote Continued From Previous Page)
Thus, without 12 U.S.C. § 1452(f), Freddie Mac would be unable to rely on its status as a federally chartered corporation to invoke federal court jurisdiction.  Appaloosa argues that § 1452(f) was enacted to establish a narrow exception to 28 U.S.C. § 1349.  In light of the remaining language in the introductory clause referencing "any other provision of law," however, the Court disagrees that the leading clause of § 1452(f) requires the narrow reading Appaloosa proposes.

or controversy . . . to which the Corporation is a party" and that removal may be accomplished "at any time before . . . trial."  12 U.S.C. § 1452(f)(3).

Subsections (f)(2) and (f)(3) use the identical phrase "to which the Corporation is a party."  The meaning of this language is central to the Court's inquiry, particularly the reference to "a party."  A term that is not otherwise defined within a statute should be given its "ordinary or natural meaning," and dictionaries provide a useful reference to ascertain the ordinary meaning of the words used.  *Jungers*, 702 F.3d at 1071 (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)).  Black's Law Dictionary defines "party," in relevant part, as:  "One by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment; litigant <a party to the lawsuit>."  *Party*, Black's Law Dictionary (10th ed. 2014).  Merriam-Webster defines "party," in relevant part, as "a person or group taking one side of a question, dispute, or contest <*The parties in the lawsuit reached an agreement.*>"  *Party*, Merriam-Webster, https://www.merriam-webster.com/dictionary/party (last visited Mar. 6, 2017).  The Court concludes that the statute's reference to "a party" plainly applies to Freddie Mac as a "party in interest" in this trust instruction proceeding.  Freddie Mac is directly interested in the lawsuit based on its financial stake in the disputed interpretation of the Trusts' governing documents, and it has a statutory right to appear under the Minnesota Trust Code.[8]  *See* Minn. Stat.

---

[8]     Appaloosa does not appear to dispute that Freddie Mac constitutes a "party" under the word's plain meaning.  (*See* Doc. No. 48 at 24 ("Freddie Mac may meet the

(Footnote Continued on Next Page)

§ 501C.0201.  Applying this plain meaning, the Court concludes that it has jurisdiction over this matter because it is a "civil action[] to which [Freddie Mac] is a party,"  s*ee* 12 U.S.C. § 1452(f)(2), and Freddie Mac had the power and privilege of removal based on its statutory authority to remove "any civil or other action, case or controversy in a court of a State . . . to which [it] is a party . . . at any time before . . . trial," *see id.* § 1452(f)(3).[9]  Freddie Mac is a party, so it may remove, and this Court has jurisdiction.

### 2.   *Shaffer* Cases

Relying primarily on the reasoning in four recent federal district court cases addressing Freddie Mac's removal rights under 12 U.S.C. § 1452, Appaloosa urges the Court to depart from the statute's plain meaning and adopt a more limited interpretation of the provisions in question.  *See Fed. Home Loan Mortg. Corp. v. Shaffer*, 72 F. Supp. 3d 1265 (N.D. Ala. 2014); *Fed. Home Loan Mortg. Corp. v. Litano*, Civ. No. 15-10019, 2015 WL 3632334 (D. Mass June 1, 2015); *Owcen Loan Servicing, LLC*

---

(Footnote Continued From Previous Page)
dictionary definition of a 'party' to the trust instructional proceeding having filed an objection in state court . . . .").)

[9]     Freddie Mac cites caselaw applying the federal-agency-removal statute in 28 U.S.C. § 1442 to argue that it could properly remove here absent the agreement of any other parties.  However, the Court need not apply the federal-agency-removal statute to reach this conclusion.  12 U.S.C. § 1452(f)(3) provides that cases involving Freddie Mac may be "removed *by the Corporation*," indicating that Freddie Mac alone may properly remove the case absent notice to or the consent of any other parties.  *Cf. Casey v. F.D.I.C.*, 583 F.3d 586, 591 (8th Cir. 2009) ("To read onto § 1819(b)(2)(B) a requirement that all defendants join in the FDIC's motion for removal would undermine the broad removal power that the statute grants the FDIC. We conclude that the rule of unanimity does not limit the FDIC's unilateral power of removal under § 1819(b)(2)(B).").

*v. Mickna*, Civ. No. 5:14-05330, 2015 WL 685264 (W.D. Ark. Feb. 17, 2015); *Fed. Home Loan Mortg. Corp. v. Amersey*, Civ. No. 13-13753, 2014 WL 1400086 (E.D. Mich. Apr. 9, 2014) (collectively, the "*Shaffer* cases"). None of these cases or Appaloosa's related arguments, however, persuades the Court that removal by Freddie Mac was improper here.

Appaloosa contends that the Court should read subsection (f)(3)'s reference to "party" to mean "defendant," limiting Freddie Mac's removal right to those cases in which Freddie Mac is a defendant. Appaloosa argues that this reading avoids surplusage created by reading subsection (f)(3) to broadly permit removal in any case where Freddie Mac is a party. If 12 U.S.C. § 1452(f)(3) granted removal power any time Freddie Mac is a party, Appaloosa argues, § 1452(f)(1)'s provision deeming Freddie Mac an agency for purposes of 28 U.S.C. § 1442 would be rendered superfluous. Appaloosa also suggests that the statute's reference to "any procedure for removal of causes in effect at the time of such removal," requires the Court to consider the procedures outlined in 28 U.S.C. § 1446 which only permit removal by defendants. In addition, Appaloosa argues that permitting removal in this case would be contrary to the purposes of removal and would raise constitutional concerns. The Court disagrees.

As a preliminary matter, the Court notes that the specific situation confronted by the courts in the *Shaffer* cases is not present here. In each of those cases, Freddie Mac was a plaintiff who sought removal to federal court after choosing the state court forum. Thus, these courts confronted the seemingly inequitable result of permitting Freddie Mac to remove a case when it chose to file the case in state court. *See, e.g.*, *Amersey*, 2014

WL 1400086, at *3 ("It would be . . . inequitable to supply plaintiff with yet another path to the federal court when plaintiff could have chosen the federal court in the first instance."). Indeed, one of these courts explained that Freddie Mac's actions in removing the case to federal court "constitute[d] forum shopping at its worst." *Owcen*, 2015 WL 685264, at *6; *see also Litano*, 2015 WL 3632334, at *1 ("Allowing removal in these circumstances would . . . countenance blatant forum shopping."). Here, Freddie Mac filed an objection to the Trustee's Petition as a party in interest, and it had no role in initiating this trust instruction proceeding in Minnesota state court. To the extent these cases stand for the proposition that Freddie Mac may not remove cases under 12 U.S.C. § 1452 as a state-court plaintiff, that holding has no application to the legally and factually distinguishable circumstances in this case. Nevertheless, the Court also disagrees with the reasoning in the *Shaffer* cases that limits Freddie Mac's removal right to circumstances in which it is a defendant.

First, the Court considers surplusage. An interpretation should not be rejected based on surplusage unless it "renders . . . part of the [statute] wholly redundant or meaningless." *Jungers*, 702 F.3d at 1074. "[R]edundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). Here, the Court's interpretation of subsection (f)(3)'s plain language does not render subsection (f)(1) wholly superfluous. By deeming Freddie Mac to be an agency under 28 U.S.C. § 1442, subsection (f)(1) grants Freddie Mac removal power in any "civil action . . . commenced in a State court . . . that is against or directed

to . . . [Freddie Mac] or any officer . . . of [Freddie Mac], in an official or individual capacity, for or relating to any act under color of such office . . . ." *See* 28 U.S.C. § 1442. Without a doubt, this removal power overlaps with the power granted in subsection (f)(3) to remove "any civil or other action, case or controversy . . . to which [Freddie Mac] is a party." *See* 12 U.S.C. § 1452(f)(3).  However, the right to remove under 28 U.S.C. § 1442 is also broader because it permits Freddie Mac to remove actions "directed to" it such as pre-suit subpoenas for discovery.  *See Guggenberger*, 2016 WL 7479542, at *6. Thus, even when Freddie Mac is not "a party" and may not remove under 12 U.S.C. § 1452(f)(3), it may remove pre-suit discovery proceedings "directed to" it under 28 U.S.C. § 1442.  Deeming Freddie Mac to be an agency under 28 U.S.C. § 1442 also grants removal rights to officers who do not plainly acquire removal power under subsection (f)(3).[10]  Because 28 U.S.C. § 1442 and 12 U.S.C. § 1452(f)(3) can be read to provide independent and overlapping bases for removal, the Court need not apply the canon against surplusage to depart from the statute's plain meaning in this case.  *See Conn. Nat'l Bank*, 503 U.S. at 253 (rejecting an argument based on surplusage, explaining that "[the two provisions] do overlap . . . but each section confers jurisdiction over cases that the other section does not reach"); *cf. Fed. Sav. & Loan Ins. Corp. v.*

---

[10]     At the time Freddie Mac's charter was enacted in 1970, the removal provision in 28 U.S.C. § 1442 may have *only* applied to officers.  *See In re Monies on Deposit in Accounts at Stearns Bank Nat'l Ass'n*, Civ. No. 06-542, 2006 WL 2069281, at *2 n.1 (D. Minn. July 26, 2006) ("Initially, § 1442 only permitted 'officers' of agencies, as opposed to the agency itself, to remove under that section.  Congress amended § 1442(a)(1) in 1996 to insure that an agency has a right of removal.").  This makes it even less clear that the Court should rewrite the unambiguous statutory text based on the potential surplusage between subsections (f)(1) and (f)(3).

*Ticktin*, 490 U.S. 82, 85-86 (1989) (construing a jurisdictional statute applicable to the Federal Savings and Loan Insurance Corporation and explaining that it both "confirms and enlarges federal-court jurisdiction over cases to which [it] is a party").

Next, the Court addresses subsection (f)(3)'s reference to the "procedure for removal of causes in effect at the time of such removal." According to Appaloosa, because the relevant procedures identified in 28 U.S.C. § 1446 refer only to removal by "[a] defendant or defendants," the Court should read (f)(3) to apply only when Freddie Mac is a "defendant." Courts should "ordinarily resist reading words or elements into a statute that do not appear on its face." *Jungers*, 702 F.3d at 1075 (quoting *Dean v. United States*, 556 U.S. 568, 572 (2009)). In other words, a court should "not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Id.* (quoting *Jama v. ICE*, 543 U.S. 335, 341 (2005)). Similarly, a court should not infer that the statute as written does not apply to a situation it expressly covers. *See Conn. Nat'l Bank*, 503 U.S. at 254 ("It would be dangerous in the extreme to infer . . . that a case for which the words of an instrument expressly provide, shall be exempted from its operation." (quoting *Sturges v. Crowninshield*, 4 Wheat. 122, 202 (1819))). Because the statute by its terms applies to grant removal authority in any case in which Freddie Mac is "a party," the Court will not adopt a more narrow interpretation based simply on the statutory cross-reference to procedural requirements outlined in the general removal statute.

Rather, as courts have concluded with respect to similar language in other removal statutes and in applying 12 U.S.C. § 1452(f)(3), the Court concludes that the reference to

28 U.S.C. § 1446 applies to establish only the general procedural requirements for removal and not to specify who may remove.  *See, e.g.*, *Franklin Nat'l Bank Sec. Litig. v. Andersen*, 532 F.2d 842, 846 (2d Cir. 1976) (explaining that the FDIC's special removal statute's reference to "procedure for removal" refers "solely to the mechanical portions of 28 U.S.C. § 1446 which determine the 'where,' 'when,' and 'how' of petitioning for removal" and not the "'who'" which was resolved by the special removal statute itself); *Freddie Mac v. Brooks*, Civ. No. 3:11CV313-WHA, 2011 WL 2619132, at *2 n.3 (M.D. Ala. July 1, 2011) (applying *Franklin National Bank* to Freddie Mac's removal provision).

In *Continental Cablevision of St. Paul, Inc. v. U.S. Postal Service*, the Eighth Circuit has applied this same reasoning to the special removal statute applicable to the U.S. Postal Service.  *See* 945 F.2d 1434, 1435-37 (8th Cir. 1991).  The relevant statute in *Continental Cablevision* stated:  "Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court under the provisions of chapter 89 of title 28."  *See id.* at 1435; *see also* 39 U.S.C. § 409(a). The Eighth Circuit rejected the argument that the reference to "chapter 89 of title 28" (the chapter governing removal of cases in general) limited removal to the circumstances identified in that provision.  *Cont'l Cablevision*, 945 F.2d at 1436.  Instead, the Eighth Circuit explained, "the natural meaning of the clause is simply that the procedure for removal, including time limits, form of petition, and the like, for Postal Service cases will be that laid out for cases in general in chapter 89."  *Id.*  The court thus concluded that "Section 409(a) does create for the United States Postal Service an independent ground

24

for removal from a state court to a federal court." *Id.* at 1437.  Consistent with the statute's plain meaning and following the Eighth Circuit's reasoning in *Continental Cablevision*, the Court declines to read any unstated limitations into subsection (f)(3) based on the statutory cross-reference to "procedure for removal of causes in effect at the time of such removal."

Finally, the Court considers whether it must interpret 12 U.S.C. § 1452(f) to preclude removal in this case in order to avoid questions regarding the statute's constitutionality.  Appaloosa argues that exercising jurisdiction here would impermissibly permit Freddie Mac to transform a routine state law proceeding into a federal matter based simply on its "interest" in the proceeding.  This result, Appaloosa suggests, would give Freddie Mac exceedingly broad removal authority and would upset principles of federalism.  Again, the Court disagrees.

First, by permitting removal in this case, the Court does not hold that a mere generalized interest in a proceeding would permit Freddie Mac to remove a case under 12 U.S.C. § 1452(f).  Rather, it is Freddie Mac's status as "a party" to the trust instruction proceeding that gives this Court jurisdiction under subsection (f)(2) and that gives Freddie Mac the ability to remove under subsection (f)(3).  Second, as in any case removed from state court, the Court is cognizant of the federalism interests impacted by its exercise of jurisdiction.  The Court acknowledges that this trust instruction proceeding was instituted under the Minnesota Trust Code and that such proceedings are commonly within the province of state courts.  However, "it is a traditional judicial office to give instructions to trustees who have substantial questions concerning their duties, and not

25

one that Article III is sensibly interpreted as denying to federal courts." *First Nat'l Bank of Chicago v. A.M. Castle & Co. Emp. Tr.*, 180 F.3d 814, 819 (7th Cir. 1999). So long as the questions presented in the trustee's petition and the resulting litigation establishes an "actual controversy," a federal court may properly exercise Article III jurisdiction to resolve the disputed interpretation. *See id.*; *see also In the Matter of the Trusteeships Created by Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 175 (S.D.N.Y. 2015). Indeed, proceedings initiated under the Minnesota Trust Code have been litigated in multiple federal courts, including in multiple cases in this District. *See, e.g.*, *Tropic CDO I Ltd.*, 92 F. Supp. 3d 163; *In re Trusteeship Created by LNR IV, Ltd.*, Civ. No. 12-2789 , 2013 WL 1364255 (D. Minn. Apr. 4, 2013); *In re Trusteeship Created by Alaska Indus. Dev. & Exp. Auth.*, Civ. No. 10-2996, 2010 WL 4811899 (D. Minn. Nov. 19, 2010). Finally, along with the federalism interests underlying the Court's exercise of jurisdiction over this matter, the Court is equally sensitive to the separation of powers and the need to apply the law that Congress has plainly enacted. As thoroughly articulated above, Congress unambiguously granted this Court jurisdiction over any case in which Freddie Mac is "a party" and permits Freddie Mac to remove such cases at any time prior to trial. Thus, the Court declines to depart from the statute's clear language and holds that removal was proper here.[11]

---

[11]     The Court also is not persuaded that 12 U.S.C. § 1452(f)'s statutory heading referencing "Actions by and against [Freddie Mac]" dictates a result one way or the other in this case. The statute heading also references "removal of actions" without further limitation which could be read to support Freddie Mac's reading of the statute. At best, the statute heading is ambiguous, and the Court declines to give it weight in its analysis.

### 3.   Parallel Removal Provisions

In response to Appaloosa's motion, Freddie Mac and CWC primarily urge the Court to follow the statute's plain meaning and end its inquiry there. However, these parties also direct the court to cases construing parallel removal provisions in statutes applicable to other federally chartered corporations, the FDIC, FSLIC, and RTC. Given the similarities between these statutes and Freddie Mac's charter, the Court is persuaded that these cases further support the Court's interpretation of 12 U.S.C. § 1452's plain meaning. *See Fed. Home Loan Mortg. Corp. v. Matassino*, 911 F. Supp. 2d 1276, 1281 (N.D. Ga. 2012) (explaining that "the removal language in § 1452(f)(3) is nearly identical to that in the FSLIC's and the FDIC's removal provisions" and finding "support for the argument that Congress intended each of these corporations to have ready access to the federal courts"). In construing these special removal statutes, courts have rejected many of the arguments Appaloosa urges the Court to adopt here. *See, e.g.*, *F.D.I.C. v. S & I 85-1, Ltd.*, 22 F.3d 1070, 1073 (11th Cir. 1994) ("The general removal statute expressly limits the power of removal to defendants. Section 1819 contains no such limitation. . . . We can only assume that if Congress had intended to limit FDIC's removal rights to cases in which FDIC is a defendant, it would have said so."); *Matter of Meyerland Co.*, 960 F.2d 512, 517-19 (5th Cir. 1992) (reviewing the history of federal jurisdiction and rejecting the argument that granting special removal authority to the FDIC would "thoughtlessly and improvidently push[] 'arising under' jurisdiction into a brave new world of expanded and uncontrollable growth"); *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 299 (9th Cir. 1992) (providing that the RTC may remove a case

under either its special removal provision or the general removal statute, and explaining

that "section 1441a(*l*)(3) gives RTC greater removal authority than that available to

others and takes no authority away").  The Eighth Circuit has similarly read such statutes

broadly, acknowledging the "special authority" given to the RTC and construing its

parallel jurisdictional provisions[12] to provide both federal question jurisdiction and

removal authority in "any action to which it is a party."  *Kan. Pub. Emps. Ret. Sys. v.*

*Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 609-10 (8th Cir. 1995).

---

[12]   The relevant provisions then in effect at 12 U.S.C. §§ 1441a(*l* )(1) and 1441a(*l*)(3)(A) provided:

> (l ) Power to remove; jurisdiction
> (1) In general
> Notwithstanding any other provision of law, any civil action, suit, or proceeding to which the [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit, or proceeding.
> . . .
>
> (3) Removal and remand
> (A) In general
> The [RTC], in any capacity and without bond or security, may remove any action, suit, or proceeding from a State court to the United States district court with jurisdiction over the place where the action, suit, or proceeding is pending, to the United States district court for the District of Columbia, or to the United States district court with jurisdiction over the principal place of business of any institution for which the [RTC] has been appointed conservator or receiver if the action, suit, or proceeding is brought against the institution or the [RTC] as conservator or receiver of such institution . . . .

*See Kan. Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 61 F.3d 608, 609 n.3 (8th Cir. 1995).

In particular, in *Federal Savings and Loan Insurance Corp. v. Ticktin*, the Supreme Court interpreted the FSLIC's special jurisdictional statute in a manner that supports applying the plain meaning of Freddie Mac's charter in this case. *See* 490 U.S. 82, 85-86 (1989). The FSLIC's jurisdictional statute had three clauses employing very similar language to Freddie Mac's charter,[13] and the Supreme Court construed the clauses as follows:

> [C]lause (A) lends added support to the jurisdictional basis found in [28 U.S.C.] § 1345. In addition, clause (B) enlarges the category of FSLIC litigation over which federal courts have jurisdiction because it covers all civil cases in which the FSLIC 'shall be a party,' whereas § 1345 applies only to those 'commenced' by the FSLIC. . . . Clause (C) further enlarges

---

[13]    The relevant provisions then in effect at 12 U.S.C. § 1730(k)(1) provided:

Notwithstanding any other provision of law, (A) the Corporation shall be deemed to be an agency of the United States within the meaning of section 451 of title 28; (B) any civil action, suit, or proceeding to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district and division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect: Provided, That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States. No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court.

*See Fed. Sav. & Loan Ins. Corp. v. Ticktin*, 490 U.S. 82, 84 n.2 (1989) (emphasis omitted).

> federal jurisdiction in cases involving the FSLIC by giving the agency the
> right to remove civil proceedings from state court to the appropriate federal
> district court.  Thus, . . . it is evident that each of the three clauses . . . was
> intended to buttress the FSLIC's access to a federal forum.

*Id.*  The Supreme Court's interpretation of these three clauses parallels this Court's

reading of the three subsections in 12 U.S.C. § 1452(f).  Subsection (f)(1) "lends added

support to the jurisdictional [bases] found in [28 U.S.C. §§ 1345 and 1442]."  *See id.*

Subsection (f)(2) "enlarges the category of [Freddie Mac] litigation over which federal

courts have jurisdiction because it covers all civil cases in which [Freddie Mac 'is a

party']."  *See id.*  Subsection (f)(3) "further enlarges federal jurisdiction in cases

involving [Freddie Mac] by giving the agency the right to remove civil proceedings from

state court."  *See id.*  Notably, the Supreme Court did not deem any of the three clauses in

the FSLIC's jurisdictional provision to be superfluous despite the overlapping

jurisdictional bases supporting federal jurisdiction.  *Id.*  The Supreme Court also did not

balk at the expansive federal jurisdiction conferred by Congress, adopting and crediting

Congress's plain intent to "buttress the FSLIC's access to a federal forum."  *Id.* at 86.

Given the Supreme Court's interpretation of this comparable statute, the Court reiterates

its position that removal by Freddie Mac was proper in this case.

### 4.    Legislative History

Finally, Freddie Mac and CWC also point the Court to the statute's legislative

history in support of their argument that removal was proper here.  Although the Court is

persuaded that 12 U.S.C. § 1452(f) unambiguously permitted Freddie Mac to remove this

case, the Court briefly notes the corresponding legislative history as it supports and

reinforces the Court's interpretation of the statute's text.  The Federal Home Loan

Mortgage Corporation Act was passed as part of the Emergency Home Finance Act of

1970, a larger piece of legislation enacted in response to a nationwide housing crisis.  *See*

S. Rep. No. 91-761 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 3488, 3488, 3490, 3514.

The specific legislative history relevant to § 1452(f) speaks to the broad authority

Congress sought to give Freddie Mac to ensure its ability to access the federal courts:

"Section 303(e) gives the corporation *clear authority* to bring suit in federal court and *to

remove to such court any judicial proceedings in which it is involved*, and prohibits the

issuance of any attachment or execution against the corporation or its property before

final judgment."  *Id.* at 3514 (emphases added).  This reference to the "clear authority"

Congress sought to confer upon Freddie Mac to remove "any judicial proceedings in

which it is involved" supports the Court's interpretation of the statute's plain meaning.

Freddie Mac properly removed this case, and the Court will deny Appaloosa's Motion to

Remand.

## II.     Freddie Mac's Motion to Transfer Venue

### A.     Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have

been brought."  28 U.S.C. § 1404(a).[14]  When deciding a motion to transfer pursuant to

---

[14]     The parties do not argue that this case could not have been brought in the proposed
transferee forum, the Southern District of New York.  Therefore, the Court will focus its

(Footnote Continued on Next Page)

§ 1404(a), the Court must consider three factors:  "(1) the convenience of the parties,

(2) the convenience of the witnesses, and (3) the interests of justice."  *Terra Int'l, Inc. v.*

*Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  A determination on transfer

requires a "case-by-case evaluation of the particular circumstances at hand and a

consideration of all relevant factors."  *Id.*  Typically, there is a presumption in favor of

the plaintiff's choice of forum, and the burden is on the party seeking the transfer "to

show that the balance of factors 'strongly' favors the movant."  *Graff v. Qwest Commc'ns*

*Corp*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (internal citation omitted).  Transfer

should be denied if the factors weigh evenly or "only slightly in favor of transfer."  *Id.*  In

evaluating a Motion to Transfer Venue, "[a] court may consider undisputed facts

presented through affidavits, depositions, stipulations, and other relevant documents."

*Dial Tech., LLC v. Bright House Networks, LLC*, Civ. No. 13-2995, 2014 WL 4163124,

at *8 (D. Minn. Aug. 21, 2014).

 The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to

consider' in making the transfer decision," and urges lower courts to "weigh any

'case-specific-factors' relevant to convenience and fairness to determine whether transfer

is warranted."  *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010).  Before proceeding to

its analysis of the relevant § 1404(a) factors, therefore, the Court notes a number of

case-specific factors that distinguish this case from many other cases addressing the

---

(Footnote Continued From Previous Page)
analysis on whether "the convenience of the parties and witnesses, in the interest of
justice" favors transfer.

propriety of transfer.  First, this is a trust instruction proceeding in which a trustee seeks judicial instruction concerning the interpretation of governing trust documents.  Because this is not the usual case involving a plaintiff suing a defendant over claims of particular harm, evaluating the relevant locations where the events giving rise to the Petition occurred is not a completely straightforward inquiry.  Second, the Trustee (who originally chose a Minnesota forum by filing the Petition), does not oppose Freddie Mac's Motion to Transfer Venue.  In its briefing and at oral argument, the Trustee has reiterated its neutral position on where this case is heard.  Rather, the motion is opposed by Appaloosa, a party in interest to the trust instruction proceeding who stands in an equal position to the movant, Freddie Mac, and who previously filed a lawsuit in New York state court that contributed to the Trustee's need to seek judicial instruction.  Third, this case was removed to this Court after the State Court issued an Order denying CWCAM's Motion to Dismiss on jurisdictional and *forum non conveniens* grounds.  Thus, the State Court previously considered the relevant transfer factors in the context of a *forum non conveniens* analysis.  These factors, as well as all of the unique circumstances of this particular case, diminish the persuasive value of many cases cited by the parties addressing legally and factually distinguishable circumstances.  Guided by the relevant caselaw and the Court's independent analysis of the factors particular to this case, the Court concludes that transferring this case to the United States District Court for the Southern District of New York is warranted.

33

## B.    Balance of Conveniences

Specific factors relevant to the balance-of-conveniences inquiry include:  "(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."  *Terra Int'l, Inc.*, 119 F.3d at 696 (citation omitted).  "[S]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient, and a transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer."  *Graff*, 33 F. Supp. 2d at 1121 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964)).  The Court concludes that the balance of conveniences favor transfer because the Southern District of New York would be a "more convenient forum" in numerous respects.  *Id.*

Freddie Mac argues that U.S. Bank's convenience should be afforded little weight because the real parties in interest to this case are CWCAM and the Certificateholders. For these parties, Freddie Mac argues, New York is a far more convenient forum than Minnesota given that none of these parties has any connection to Minnesota.  Freddie Mac also points to the Affidavit of CWCAM's President, David Iannarone, which states that "[t]he PSA was negotiated, drafted, and entered into in New York."  (*See* Iannarone Aff. ¶ 8.)  Freddie Mac further emphasizes that the sale of Stuy Town and the allocation of sale proceeds took place in New York.  Thus, Freddie Mac suggests that the relevant conduct, documents, and witnesses with knowledge are more likely in New York and not

34

in Minnesota.  Freddie Mac identifies categories of possible non-party witnesses with

New York connections such as employees of Wachovia Bank and Merrill Lynch, the

parties to the Co-Lender Agreement establishing the C30 Trust as responsible for

administering the loan.  Freddie Mac also identifies one possible witness by name—

Robert Verronne, a Wachovia employee who arranged for the sale of Stuy Town.

Finally, Freddie Mac argues that the PSA's choice of law provision providing for

New York law strongly favors transfer under this factor.

Appaloosa, on the other hand, argues that the convenience factors weigh against

transfer.  Appaloosa points out that neither the Trustee, CWCAM, nor the

Certificateholders in this action is primarily based in New York.  In opposition to Freddie

Mac's claims about the location where the PSA was negotiated and entered into,

Appaloosa points out that the original parties to the C30 PSA were in Minnesota,

North Carolina, the District of Columbia, and Maryland.  Appaloosa also argues that

reliance on the conclusory Iannarone Affidavit is insufficient.  Appaloosa further

suggests that the location of the underlying sale is not relevant because this case concerns

how to divide the funds rather than anything about the sale itself.  It also argues that

relevant conduct relating to the Trustee's possible future efforts to reclaim funds kept by

CWCAM will occur in Minnesota.  With respect to witnesses, Appaloosa also argues that

Freddie Mac has failed to meet its burden of establishing the propriety of transfer by not

identifying key witnesses or the topics they would address at trial.  Freddie Mac's

speculation about groups of possible witnesses, Appaloosa argues, is not enough.

Appaloosa also notes that witnesses may not even be needed at all given the limited

nature of the contract interpretation questions presented in the Trustee's Petition, so this factor should be given little weight.  Regarding documents, Appaloosa argues that Freddie Mac has only offered speculation regarding the location of key documents, and notes that the Trusts' loan files are housed in Minnesota according to sworn testimony by Wells Fargo.  Even so, Appaloosa argues, the location of documents should be given little weight due to modern technology and e-discovery.  Last, Appaloosa suggests that the choice of law provision does not require transfer and notes that the PSA did not include a forum selection clause.

### 1.    Convenience of the Parties

"In assessing the relative convenience of the parties, '[t]he logical starting point . . . is a consideration of [the parties] residences in relation to the district court chosen by the plaintiff and the proposed transferee district."  *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009) (quoting *Facilitec Corp. v. Omni Containment Sys., LLC*, Civ. No. 03-3187, 2003 WL 21781914, at *1 (D. Minn. July 31, 2003)).  The Trustee's corporate headquarters, principal place of business, and principal Corporate Trust Services office is in Minnesota.  (Doc. No. 80 ("Hampson Decl.") ¶ 4,  Ex. B. ¶ 2.)  Appaloosa is based out of New Jersey.  (Bolin Decl. ¶ 1.)  CWCAM is a Delaware limited liability company with its headquarters in Maryland.  (Iannarone Aff. ¶ 3.)  Freddie Mac and Appaloosa do not dispute that Freddie Mac and Fannie Mae have their headquarters in Virginia and the District of Columbia, respectively.  (Doc. No. 55 at 12; Doc. No. 79 at 15.)  Given these parties' locations, New York appears to be a more convenient forum for most of the parties in this case.  *See*

*Stadler v. Pfizer Inc.*, Civ. No. 08-3295, 2012 WL 684005, at *2 (D. Minn. Mar. 2, 2012) ("Defendants' principal places of business . . . are mainly located on the East Coast, making Pennsylvania a closer and more convenient forum than Minnesota.").

Transfer should be denied where the effect is "simply to shift the inconvenience from the defendant to the plaintiff." *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1078 (D. Minn. 2014). However, this case does not present "the rather classic scenario that it is more convenient for each party to litigate in its home forum rather than the home forum of the other party." *BAE Sys. Land  & Armamaments L.P. v. Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015). Rather, Freddie Mac seeks to transfer this case to the Southern District of New York, a forum that is not its home forum or the home forum of any other party. CWCAM "fully supports" Freddie Mac's transfer motion consistent with its request that this Court rehear its *forum non conveniens* arguments considered by the State Court in response to its Motion to Dismiss. (*See* Doc. No. 95 at 10-11.) PSW "takes no position" on the transfer motion, but has itself pursued litigation in New York state court relating to facts underlying the Petition. (*See* Doc. No. 74 at 2 n.1; *see also* Iannarone Aff. ¶ 15.) Fannie Mae has not appeared to support or oppose the transfer motion. U.S. Bank is the only party for whom Minnesota appears to be a convenient forum, and U.S. Bank does not oppose transfer. (*See* Doc. No. 75 at 4 n.5, 14.) Appaloosa is the only party affirmatively opposing transfer to the Southern District of New York, but Appaloosa does not even argue that a New York forum would be inconvenient for itself. Notably, Appaloosa pursued litigation in New York state court relating to this matter prior to the Trustee filing its Petition. (Pet.

37

¶¶ 56-59.)  This weighs against any inference that New York would be inconvenient for

Appaloosa.  *See Ahlstrom v. Clarent Corp.*, Civ. No. 02-780, 2002 WL 31856386, at *9

(D. Minn. Dec. 19, 2002) ("[T]he vast majority of [the local plaintiffs] sought to litigate

in California one year ago and there is no persuasive evidence of inconvenience to them

should they have to litigate in California now.")  Thus, based on the parties' locations and

their stated positions regarding transfer, the Court concludes that the convenience of the

parties favors transfer.

### 2.    Convenience of the Witnesses

"The convenience of the witnesses is an important factor because it determines the

relative ease of access to sources of proof." *Bae Sys.*, 124 F. Supp. 3d at 885 (quoting

*Toomey v. Dahl,* 63 F. Supp. 3d 982, 993 (D. Minn. 2014)).  Providing the names of

expected non-party witnesses and a general statement of their testimony is typically

required to support a motion to transfer.  *See id.* at 886.  However, "this is not a

requirement sine qua non" to establish transfer.  *See Ahlstrom*, 2002 WL 31856386, at *9

n.12 (quoting *Hill v. Upper Miss. Towing Corp.*, 141 F. Supp. 692, 696 (D. Minn. 1956)).

In *Ahlstrom*, for example, the court determined that the "failure to provide information

about witnesses [would] not defeat the motion" in light of other factors favoring transfer.

*See id.*  The court credited the defendants' general statements regarding possible

witnesses residing in the transferee forum and noted that "[t]he Plaintiffs have not

indicated that any third-party witnesses in this matter are located in Minnesota." *Id.* at

*9.  Thus, the court determined that this factor "tip[ped] mildly in favor of transfer." *Id.*

In this case, Freddie Mac has generally identified individuals likely to be in New York who may be called upon as witnesses, but it has not clearly described the anticipated testimony of such possible witnesses. Freddie Mac's lack of specificity would in some cases justify weighing this factor against transfer. *See, e.g.*, *Road Mach. & Supplies, Co. v. Fed. Signal Corp.*, Civ. No. 03-3524, 2003 WL 22326577, at *4 (D. Minn. Oct. 7, 2003). In this contract interpretation case, however, the Court doubts whether much, if any, witness testimony will be needed to interpret the PSA and provide instruction to the Trustee in response to the Petition. Further, no material non-party witnesses have been identified in Minnesota. The Court concludes that the convenience of the witnesses is a neutral factor.

### 3.   Accessibility to Records and Documents

Given modern advances in technology and when the parties have the ability to bear the costs of copying the necessary documents, "the location of documents is no longer entitled to much weight in the transfer of venue analysis." *See CBS Interactive Inc.*, 259 F.R.D. at 410. The Court finds this to be particularly true in this case where the parties have already identified and submitted numerous relevant documents in question throughout the course of this proceeding. This factor is neutral.

### 4.   Location Where the Conduct Complained of Occurred

As noted previously, determining "where the conduct complained of occurred" is not particularly straightforward in light of the procedural posture of this trust instruction proceeding. Freddie Mac directs the Court to the location where the governing agreements were negotiated, drafted, and entered into along with the location of the

Property's sale and distribution of proceeds—all of which occurred in New York. Appaloosa, on the other hand, challenges Freddie Mac's conclusion that the PSA was entered into in New York and points to the Trustee's actions in Minnesota, including the decision to file the Petition and possible future efforts of the Trustee to reclaim disputed funds from CWCAM.

Courts considering similar transfer motions in trust instruction proceedings have looked at the location where the governing agreement was negotiated and drafted as well as where the underlying conduct precipitating the Petition took place. *See LNR IV*, 2013 WL 1364255, at *6; *see also In re Trusteeship Created by JER CRE CDO 2005-1*, Civ. No. 12-2791, 2013 WL 1364258, at *4 (D. Minn. Apr. 4, 2013) ("The record indicates that the negotiation and drafting of the Indenture was completed in New York."); *Alaska Indus. Dev.*, 2010 WL 4811899, at *3 ("As the petitioner in this action, . . . U.S. Bank complains that respondents failed to satisfy the Guaranty, not of its own failure to accelerate. If failure to satisfy the Guaranty can be associated with any particular place, it is Alaska, where the Guarantors are located."). The location where the Petition was filed is not the "conduct complained of" and should not be weighed heavily under this factor absent other relevant Minnesota connections. *See LNR IV*, 2013 WL 1364255, at *6; *JER CRE CDO*, 2013 WL 1364258, at *4.

Here, the record supports that the conduct complained of and pertinent events underlying that conduct took place in New York. The Petition seeks a judicial instruction regarding a disputed interpretation about how to allocate proceeds from the sale of the Property. The sale of the Property and the subsequent distribution of Trust assets by

CWCAM are thus relevant events underlying the Petition.  These events indisputably took place in New York.[15]  The Petition arose in response to Appaloosa's disputed interpretation of the PSA and its lawsuit filed in New York state court to prevent CWCAM from distributing the funds according to its interpretation.  Again, these events took place in New York.  The effect of the original New York Foreclosure Judgment figures centrally in one of the issues presented for judicial resolution.  Further, although Appaloosa attempts to raise doubt regarding where the PSA was drafted and entered into, the Court is not persuaded that this fact is genuinely disputed in light of the sworn testimony of CWCAM's President and the lack of any alternative testimony offered in opposition.  Even if there were some dispute about the location where the PSA was entered into, however, the Court concludes that a significant portion of the underlying conduct precipitating the Trustee's Petition undisputedly took place in New York.  Although the Court reiterates that this case will likely involve pure contract interpretation resolvable without resort to live witnesses or access to the locations precipitating the Petition, this factor weighs in favor of transfer given the numerous significant underlying events which took place in New York.

### 5.    Applicability of Each State's Substantive Law

The Court could aptly apply New York law as provided in the PSA's choice of law provision.  On its own, therefore, the Court finds this factor to be neutral.  However,

---

[15]    The Petition clearly centered on the anticipated sale of Stuy Town and the proper distribution of the resulting proceeds.  Therefore, the Court considers these events to be relevant "conduct complained of" in the Petition despite the fact that the sale and distribution of proceeds took place after the Petition was filed in State Court.

the presence of a choice of law provision is a factor courts may properly consider in weighing the interests of justice.  Thus, the Court revisits this factor, below.

Taken together, the Court concludes that the balance of conveniences supports transfer to New York given the convenience to the parties and the location of the relevant circumstances leading to the Trustee's Petition.

### C.    Interests of Justice

In weighing the interests of justice, courts consider:  "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Terra Int'l, Inc.*, 119 F.3d at 696 (citation omitted).  The Court weighs this factor "very heavily."  *Graff*, 33 F. Supp. 2d at 1122; *see also CBS Interactive Inc.*, 259 F.R.D. at 410 ("The interests of justice factor is often viewed as being the most important factor.").

Freddie Mac argues that the interests of justice weigh strongly in favor of transfer and that this factor should itself be given substantial weight.  In particular, Freddie Mac argues that there is a significant advantage to permitting a New York court to resolve the questions of New York law posed in the Petition.  Further, Freddie Mac argues that judicial economy favors transfer because this case is at an early stage and New York courts are familiar with the loans, Trusts, and Property at issue in this case.  Plaintiff's forum choice, Freddie Mac argues, weighs in favor of transfer because U.S. Bank does not oppose transfer.  Freddie Mac also argues that the costs of litigation in Minnesota

42

would be greater for the parties.  Finally, Freddie Mac emphasizes the local interest in this case in New York because the sale of Stuy Town involved New York's largest multifamily residence.

Appaloosa counters that the interests of justice weigh against transfer because the Minnesota State Court previously declined to dismiss the Petition on *forum non conveniens* grounds in light of identical arguments.  It also takes issue with Freddie Mac's characterization of this case being at an early stage given that the case has been through months of litigation in both State and federal court since the Petition was filed.  Appaloosa also notes that the costs of litigation should not be a factor afforded much weight for the specific parties in this case given their ability to afford litigation in either forum.

### 1.     Judicial Economy

The judicial economy factor commonly implicates concerns over duplicative litigation that could possibly be consolidated into one proceeding.  *See, e.g.*, *Ahlstrom*, 2002 WL 31856386, at *6.  At least six actions involving the Property and the Senior Loan have been litigated in New York state or federal courts since CWCAM began servicing the loan.  (*See* Iannarone Aff. ¶ 15.)  The fact that these other proceedings in New York *previously* occurred relating to the Trusts and the Property would not in most cases be particularly persuasive because this proceeding cannot be consolidated with any of this prior litigation.  However, the Petition specifically refers to previously litigated proceedings in New York state and federal courts, and the court who ultimately instructs the Trustee will be required to consider and evaluate the effect of those New York state

court proceedings. Furthermore, the Court concludes that the relative familiarity of New York state and federal courts with the Trusts and the Stuy Town Property will promote the efficient resolution of this matter. *See In re Monies on Deposit in Accounts at Stearns Bank Nat'l Assn*, Civ. No. 06-542, 2006 WL 3841518, at *2 (D. Minn. Dec. 29, 2006) (determining that "judicial resources and efficiency" were furthered by transfer to Florida because "both federal and state courts in Florida have issued orders related to the interpleaded funds and are familiar with the underlying facts of the dispute" and suggesting that "the United States District Court for the Southern District of Florida is better suited to resolve the potential conflict between its order and the order of the Florida state court that gave rise to this interpleader action").

The Court acknowledges that there have been several months of litigation in this case based on jurisdictional and procedural challenges following the Trustee's filing in State Court. Notwithstanding these procedural delays, however, the case is still at an early stage and no court has yet addressed the merits of the Trustee's Petition. Thus, transferring the case would not create a duplicative waste of judicial resources. *See LNR IV*, 2013 WL 1364255, at *6. Furthermore, CWCAM brought a Motion to Dismiss the Petition in State Court on jurisdictional grounds, and it seeks to have this Court rehear those jurisdictional challenges here. Specifically, CWCAM challenges that Minnesota courts have personal jurisdiction over it and challenges the location of this case on *forum non conveniens* grounds. CWCAM's interpretation of the PSA and its resulting distribution of sale proceeds undisputedly precipitated the Trustee's need to seek judicial instruction. Although only the Trustee and Certificateholders will be bound by the

44

outcome of this litigation, CWCAM is certainly a key party in this case. Without taking a position on whether the State Court properly addressed any of CWCAM's jurisdictional challenges, the Court concludes that it would be in the interests of justice and judicial economy to transfer this case to New York because a transfer will eliminate CWCAM's primary jurisdictional challenges and ensure its participation in the proceeding. *Cf. Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1109 (D. Minn. 2010) ("[T]he Court harbors serious doubts about whether Abrahamson is subject to personal jurisdiction here. . . . Transfer to Texas, where Abrahamson indisputably is subject to personal jurisdiction, would therefore serve the interests of justice."). To promote judicial economy, the Court concludes this factor favors transfer.

### 2.    Plaintiff's Choice of Forum

In opposing Freddie Mac's motion, Appaloosa relies heavily on the presumption in favor of a plaintiff's chosen forum and the corresponding burden on the party seeking transfer. *See In re Apple, Inc.*, 602 F.3d at 913 (discussing the relationship between the plaintiff's forum choice and the burden to support transfer). However, the Court gives minimal weight to the Trustee's selection of a Minnesota forum in this case because (1) the Trustee does not oppose transferring this case to New York, and (2) numerous pertinent underlying facts took place in New York.

A plaintiff's consent to transfer is a factor to be considered in weighing the interests of justice. *Stadler*, 2012 WL 684005, at *2. As another Judge in this District has held, "where the plaintiff has no underlying interest in where the case is litigated, as in an interpleader action, courts need not defer to the plaintiff's choice of venue."

*Stearns Bank*, 2006 WL 3841518, at *1.  In *Stearns Bank*, an interpleader action filed by

a Minnesota bank to resolve competing claims to funds, the court found "no reason to

afford any deference" to Stearns Bank's chosen forum and transferred the case to the

forum where "the actions giving rise to the parties' competing claims [exclusively]

occurred."  *Id.* at *1-3.  The Court acknowledges that a trust instruction proceeding and

an interpleader action are not one and the same, and the Trustee here may have a stronger

interest in the outcome of this matter than the plaintiff in an interpleader action.  Even so,

the fact that the Trustee has specifically disavowed any opposition to transferring this

case to New York suggests giving less deference to the Trustee's chosen forum.

Furthermore, "[w]hile there is a general presumption in favor of a plaintiff's

choice of forum, courts afford that choice significantly less deference when . . . the

transaction or underlying facts did not occur in the chosen forum."  *Nelson v. Soo Line*

*R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999) (citations omitted); *see also In re*

*Apple, Inc.,* 602 F.3d at 913 (affording "minimal weight" to the chosen forum "[b]ecause

no relevant connection exists between [the parties], potential witnesses, or the dispute and

[the plaintiff's chosen forum]").  In a trust instruction proceeding where "none of the

underlying events occurred in Minnesota," U.S. Bank's forum choice of Minnesota

merits little weight.  *See LNR IV*, 2013 WL 1364255, at *7; *see also JER CRE CDO*,

2013 WL 1364258, at *4.[16]  As the Court explained above, the pertinent underlying facts

---

[16]     In these companion cases, the Indentures at issue included a forum selection
clause, leading the court to conclude that "U.S. Bank waived any objection to venue in
New York."  *LNR IV*, 2013 WL 1364255, at *7; *JER CRE CDO*, 2013 WL 1364258, at
(Footnote Continued on Next Page)

took place in New York.  Thus, the Court gives U.S. Bank's choice of forum minimal weight in this case.

### 3.  Questions of Local Law

"Where ample guidance exists on the application of a foreign state's laws—as, unquestionably, is the case in the context of New York contract law—there is little need to afford any significant weight to this particular consideration."  *Datalink Corp.*, 33 F. Supp. 3d at 1079.  Even where a court is capable of applying another state's law, there are "obvious" advantages to permitting a local court to determine questions of its own law.  *See Azure LLC v. Figueras Seating U.S.A., Inc.*, Civ. No. 12-867, 2012 WL 12870253, at *4 (D. Minn. Sept. 24, 2012).  The documents for which the Trustee seeks judicial interpretation are governed by New York law.  Resolving the Petition will also require a court to construe the effect of a Foreclosure Judgment entered in the United States District Court for the Southern District of New York.  As noted above, although this Court is capable of applying New York contract law to issue an instruction binding upon the Trustee and Certificateholders, the Court concludes that New York courts have a greater interest in issuing such an instruction in this case.[17]  According to

---

(Footnote Continued From Previous Page)

*4.  Although there is no forum selection clause in the agreements at issue in this case, U.S. Bank's assertion that it does not oppose transfer similarly weakens the presumption in favor of U.S. Bank's forum choice.

[17]     The Court also concludes that the Minnesota Trust Code provisions that precipitated the filing of the Petition in Minnesota State Court could be applied by a New York court without difficulty.  *See Alaska Indus. Dev.*, 2010 WL 4811899, at *4 ("Minnesota Statute § 501B.16 . . . is not so difficult or unclear as to render the District of

(Footnote Continued on Next Page)

CWCAM's President, "[b]ecause of the Property's importance to New York City and its residents, CWCAM's servicing of the Senior Loan, the operation of the Property, and the prior litigation concerning the Property have received intense media coverage in the New York press." (Iannarone Aff. ¶ 16.)  There does not appear to be any dispute that Stuy Town is a significant development in New York City.  In light of the circumstances of this case, it is apparent that New York has a far greater local interest in resolving the dispute over the proper distribution of the funds in question.  Thus, this factor favors transfer.

### 4.    Other Interest-of-Justice Factors

The Court concludes that the comparative costs of litigation, each party's ability to enforce a judgment, obstacles to a fair trial, and conflict of law issues are neutral.  Under the interests of justice, Appaloosa has raised an additional factor that it argues weighs against transfer.  Because the State Court previously denied CWCAM's *forum non conveniens* argument raised in its Motion to Dismiss, Appaloosa argues that this Court's consideration of Freddie Mac's transfer motion raises law-of-the-case, issue preclusion, and estoppel concerns.  Appaloosa notes that it would be particularly unfair to grant the venue transfer motion because Freddie Mac explicitly declined to take a position on the *forum non conveniens* issue in State Court.  The Court disagrees.

---

(Footnote Continued From Previous Page)
Minnesota uniquely qualified to interpret it.").  Indeed, courts in the Southern District of New York have applied the Minnesota Trust Code on occasion in similar proceedings. *See, e.g.*, *Tropic CDO I Ltd.*, 92 F. Supp. 3d 163.

The Supreme Court has explained that "both § 1404(a) and the

*forum non conveniens* doctrine from which it derives entail the same balancing-of-

interests standard." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*,

134 S. Ct. 568, 580 (2013).  However, federal courts have greater discretion in evaluating

a § 1404 motion.  *See Ahlstrom*, 2002 WL 31856386, at *3 n.9 (discussing the

relationship between § 1404 and the *forum non conveniens* doctrine and explaining that

although the relevant factors may be the same, "the discretion to be exercised is broader"

in a § 1404 analysis (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).  Thus, the

Supreme Court has held that "a prior state court dismissal on the ground of *forum non*

*conveniens* can never serve to divest a federal district judge of the discretionary power

vested in him by Congress to rule upon a motion to transfer under § 1404(a)." *Parsons v.*

*Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73-74 (1963).  The same rationale applies

here, and the Court concludes that the State Court's decision on *forum non conveniens* is

not preclusive.  Notably, the State Court was considering whether to dismiss the Petition

and did not have the option to transfer to a more convenient forum.  In addition, the

Trustee argued in opposition to CWCAM's *forum non conveniens* arguments in State

Court whereas here it does not oppose transfer.  Thus, the Court rejects Appaloosa's

argument that the State Court's prior ruling on *forum non conveniens* weighs against

transfer here.

In sum, the interests of justice weigh in favor of transfer based on judicial

economy and the advantages of having a New York court hear this case governed by

New York law and relating to a significant New York property.  These interests far outweigh the minimal weight given to the Trustee's forum choice in this particular case.

### D.    Conclusion

"There is no precise mathematical formula to be employed when balancing the relevant factors. . . .  'At best, the judge must guess, and we should accept his guess unless it is too wild.'"  *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, Civ. No. 09-720, 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (quoting *Ford Motor Co. v. Ryan*, 182 F.2d 329, 331-32 (2d Cir. 1950)).  It cannot be sensibly argued that transferring this case to New York is "too wild."  The relevant facts precipitating the Trustee's Petition—the sale of Stuy Town and distribution of the sale proceeds— indisputably occurred in New York.  The PSAs are governed by New York law.  New York courts have been involved with litigation over the Trusts and the Property on numerous occasions, including lawsuits involving multiple parties to this case.  The Trustee does not oppose transferring this case to New York, and New York appears to be a more convenient forum for all parties here, including the party opposing transfer.  In short, considering all of the relevant factors and the particular circumstances in this case, New York is a more convenient forum for this New York case.  *Cf. J. F. Pritchard & Co. v. Dow Chem. of Can., Ltd.*, 462 F.2d 998, 1002 (8th Cir. 1972) ("[T]here is more than a Canadian nexus here. The whole case is Canadian.").  In the interests of justice, the Court finds it is appropriate to transfer this matter to the United States District Court for the Southern District of New York.

**III.    CWCAM's Motion to Rehear CWCAM's Motion to Dismiss Under Fed. R. Civ. P. 12(b) or Alternatively, to Adopt the State Court Order**

In light of the Court's decision to transfer this case to the Southern District of New York, the Court declines to consider CWCAM's Motion to Rehear the State Court Motion to Dismiss or Adopt the State Court Order.  Transferring this case will resolve CWCAM's arguments regarding personal jurisdiction and *forum non conveniens*, but other issues may remain to be decided.  Thus, the Court finds it appropriate to reserve judgment on this motion in its entirety so that it can be evaluated by the transferee forum.

## CONCLUSION

The Court concludes that Freddie Mac properly removed this matter to federal court in light of its clear statutory authority to remove any action in which it is a party.  *See* 12 U.S.C. § 1452(f)(3).  Furthermore, Freddie Mac's statutory charter gives this court subject matter jurisdiction, making it proper for the Court to act upon the remaining motions before it.  *See id.* § 1452(f)(2).  The Court finds it proper to transfer this matter to the United States District Court for the Southern District of New York for the convenience of the parties and in the interest of justice.  The Court declines to rule on CWCAM's pending motion, and reserves judgment to the transferee forum.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

51

1.      Determination on CWCAM's Motion to Rehear CWCAM's Motion to Dismiss Under Fed. R. Civ. P. 12(b) or, Alternatively, to Adopt the State Court Order (Doc. No. [30]) is **RESERVED**.

2.      Appaloosa's Motion to Remand (Doc. No. [46]) is **DENIED**.

3.      Freddie Mac's Motion to Transfer (Doc. No. [53]) **GRANTED**.

4.      The Clerk of Court is **DIRECTED TO TRANSFER** this case to the United States District Court for the Southern District of New York.

Dated:  March 14, 2017                          s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                United States District Judge