UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Trusts established under the Pooling and Servicing Agreements relating to the Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-C30; COBALT CMBS Commercial Mortgage Trust 2007-C2 Commercial Mortgage Pass-Through Certificates, Series 2007-C2; Wachovia Bank Commercial Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2007-C31; ML-CFC Commercial Mortgage Trust 2007-5 Commercial Mortgage Pass-Through Certificates, Series 2007-5; and ML-CFC Commercial Mortgage Trust 2007-6 Commercial Mortgage Pass-Through Certificates, Series 2007-6 | Case No. 1:17-cv-01998-KPF<br><br>**REPLY MEMORANDUM OF LAW OF PROPOSED INTERVENOR INESSOFT, LLC IN SUPPORT OF MOTION TO INTERVENE** |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................... II
INTRODUCTION ....................................................................................................................1
I.    INESSOFT'S MOTION IS TIMELY ...........................................................................3
II.   INESSOFT'S INTERVENTION DOES NOT ADD COLLATERAL ISSUES TO THE CASE OR SEEK CONTINGENT RELIEF ................................................................4
III.  APPALOOSA DOES NOT ADEQUATELY REPRESENT INESSOFT'S INTERESTS AND INESSOFT WOULD BE PREJUDICED IF NOT PERMITTED TO INTERVENE ..........................................................................................6
IV.  INESSOFT'S ACQUISITION OF NOTES AFTER THE FILING OF THE PETITION SHOULD NOT PREVENT ITS INTERVENTION ........................................8
CONCLUSION .......................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed.*,
   No. 00-cv-632, 2005 WL 1690537 (S.D.N.Y. July 20, 2005) .................................................. 6

*GSAA Home Equity Trust 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A.*,
   133 F. Supp. 3d 1203 (D.S.D. 2015) .................................................................................. 8, 9

*Hartford Fire Ins Co. v. Mitlof*,
   193 F.R.D. 154 (S.D.N.Y. 2000) .......................................................................................... 3

*House of Europe I, Ltd. v. Wells Fargo Bank, N.A.*,
   No. 13-cv-519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ................................................. 8

*Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*,
   725 F.2d 871 (2d Cir. 1984) ................................................................................................ 6

*In re Tropic CDO I Ltd.*,
   92 F. Supp. 3d 163 (S.D.N.Y. 2015) ..................................................................................... 9

*In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2*,
   No. 14-cv-2494, 2014 WL 3858506 (S.D.N.Y. July 24, 2014) ................................................ 9

*Wash Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990) .................................................................................................. 6

### **Statutes**

N.Y. Jud. Law § 489 (McKinney 2017) .................................................................................... 10

Proposed Intervenor and Party in Interest INESSOFT, LLC ("Inessoft") respectfully submits this reply memorandum of law in further support of its Motion to Intervene, dated February 27, 2017, in the above-captioned action.

## INTRODUCTION

In its opening brief, Inessoft explained why it has a substantial and direct interest in this litigation that is not adequately protected by current parties, warranting intervention. Specifically, Inessoft demonstrated that it stands to recover more than $10 million on its Class E, F, and G Notes in MLCFC 2007-5 if the Disputed Funds are held to be Gain-on-Sale Proceeds and properly distributed as of the January 2016 distribution date, when originally received. Inessoft further demonstrated that Appaloosa—the only current party supporting Inessoft's arguments related to categorization of the Disputed Funds—has interests directly adverse to Inessoft in respect of distribution timing, an adversity of interests that was crystallized by realized losses suffered by MLCFC 2007-5 in January 2017, less than a month prior to Inessoft's motion to intervene.

In response to Inessoft's motion, Appaloosa and CWCAM do not contest that Inessoft has a multimillion dollar stake in the outcome of this case, nor do they provide any response to Inessoft's contention that no present party to the litigation adequately represents Inessoft's interests related to distribution timing. Instead, they respond that Inessoft's motion is untimely and that the distribution timing issue raised by Inessoft is beyond the scope of the trust instruction proceeding brought by the Trustee. Both objections are without merit.

*First*, the timeliness argument presented by Appaloosa and CWCAM is predicated entirely on the passage of time between the filing of the Petition and Inessoft's motion to intervene. Neither Appaloosa nor CWCAM so much as contend that the passage of time has caused them any prejudice. Nor could they, since this case has not proceeded past its

1

preliminary stages in the sixteen months since it was filed. Because the delay in Inessoft's motion to intervene has not caused prejudice to any party, it satisfies the timeliness requirement for intervention.

*Second*, Appaloosa's and CWCAM's contention that Inessoft's intervention would inject collateral issues into this proceeding ignores the plain language of the Trustee's Petition, which makes clear that it seeks instruction on how to allocate the Disputed Funds held to be Gain-on-Sale Proceeds, and further seeks a broad "discharge[]" of all duties "in connection with the Disputed Funds," which would effectively prevent adjudication of the distribution timing issue in a different forum. Because the Petition places both the categorization of the Disputed Funds and the distribution timing issue squarely before this Court, Inessoft's participation is critical to protect its interest (and those of similarly situated certificateholders) in respect of distribution timing.

As a fall back argument, CWCAM contends that Inessoft's intervention is inappropriate because it did not hold its certificates in January 2016, when the Disputed Funds were first received. However, Inessoft's right to distribution of past-due Gain-on-Sale Proceeds is based on its current status as a certificateholder and rights under the MLCFC 2007-5 Pooling and Servicing Agreement ("PSA"), and is not in any way reliant on having held its certificates in January 2016. The inapposite authority cited by CWCAM—which is limited to the context of derivative actions—is not to the contrary. Thus, the timing of Inessoft's acquisition has no bearing on its right to participate in this proceeding.

For these reasons, as set forth in greater detail below, Inessoft's motion to intervene should be granted.

**I.      INESSOFT'S MOTION IS TIMELY**

Both Appaloosa and CWCAM argue that Inessoft's motion to intervene is untimely based *solely* on the passage of time since the filing of the initial Petition. *See* App. Br. 21; CW Br. 6. Their arguments wholly ignore that "the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000). Neither Appaloosa nor CWCAM so much as mention any prejudice that would result from the passage of time between the filing of the Petition and Inessoft's motion to intervene.[1] They fail to do so because no prejudice exists. For this reason alone, the objecting parties' timeliness arguments should be rejected.

Appaloosa's only other support for its timeliness argument is that Inessoft "has advanced no reason for its failure to act promptly." App. Br. 22. That is simply not true. As Inessoft explained in its opening brief, Br. 3, 17, after it made a multimillion dollar investment in Class E, F, and G Notes of MLCFC 2007-5, which were, at the time of Inessoft's investment, first in line to receive any Disputed Funds found to be Gain-on-Sale Proceeds in this case, a $150.9 million realized loss hit MLCFC 2007-5 in January 2017. That January 2017 realized losses caused certificates senior to those held by Inessoft to be written down, and brought the distribution timing issue raised by Inessoft's objection and answer into central focus. They also created a direct adversity of interest between Appaloosa and Inessoft, *see* Br. 17, which is further confirmed by Appaloosa's unwillingness to concede the distribution timing issue in its opposition to this motion to intervene. Within six weeks of those losses being reported, Inessoft

---

[1] Appaloosa's attempt to bootstrap an argument regarding "collateral issues" (App. Br. 22-23) is unavailing. While the supposed prejudice to Appaloosa from Inessoft's involvement is a factor in evaluating the propriety of Inessoft's intervention—and is addressed below in this brief—it has no bearing on timeliness.

3

filed its motion to intervene to protect its rights in relation to the timing of distribution.  Inessoft Br., Dkt. No. 104, Feb. 27, 2017.

Finally, CWCAM argues that Inessoft's intervention should be denied because it had not filed an objection before February 3, 2016, the initial date for responses set by the Minnesota state court.  CW Br. 6.  This argument is wholly disingenuous.  CWCAM fails to mention that two other parties, Fannie Mae and Freddie Mac, also filed objections *after* the initial February 3, 2016 deadline, yet CWCAM raised no opposition to their participation in this proceeding.[2]  Making matters worse, CWCAM also failed to file an objection by February 3, 2016, instead moving to dismiss the Petition; indeed, CWCAM did not file its Answer and Objection until May 2, 2017, several weeks *after* Inessoft's motion to intervene.  Thus, by CWCAM's logic, it too would be barred from participating in the case.

## II. INESSOFT'S INTERVENTION DOES NOT ADD COLLATERAL ISSUES TO THE CASE OR SEEK CONTINGENT RELIEF

Both Appaloosa and CWCAM accuse Inessoft of improperly seeking to alter the scope of this litigation by injecting the collateral issue of distribution timing into a dispute supposedly limited to the proper categorization of the Disputed Funds.  App. Br. 18, CW Br. 11.  However, this argument ignores the plain terms of the Petition, which places the distribution timing squarely before this Court.  *First*, the Petition states from the outset that "the Trustee requests that this Court instruct the Trustee, beneficiaries, and any other interested parties as to the proper interpretation and construction of the PSAs with respect to how certain proceeds from the expected sale of a trust asset ***must be allocated***."  Petition at 2 (emphasis added); *see also* Petition at 14 ("this Petition concerns only the manner in which certain expected sales proceeds should be allocated by the responsible party after the transaction has been completed").  As the

---

[2]  Fannie Mae filed its objection and answer on April 28, 2016.  Minn. Dkt. No. 81.  Freddie Mac filed its objection and answer on May 6, 2016.  Minn. Dkt. No. 112.

timing of the distribution will impact to whom Gain-on-Sale Proceeds are allocated, those timing issues fall directly within the instruction sought by the Trustee. *Second*, in addition to seeking guidance on the categorization and allocation of the Disputed Funds, the Petition seeks a broad "discharge[]" of the Trustee's "duties in connection with the Disputed Funds." Petition at 15. Such a release, if granted, would effectively prevent Inessoft from protecting its contractual rights in relation to distribution timing because it would discharge the Trustee of all duties "in connection with th[ose] Disputed Funds." Because the Petition covers the very topics that are the focus of Inessoft's intervention, the objecting parties' contention that Inessoft is adding new issues to this proceeding is unavailing.

Relatedly, both Appaloosa and CWCAM argue that Inessoft's intervention should be denied because its interest in this proceeding is contingent on the Court's predicate holding that some or all of the Disputed Funds are Gain-on-Sale Proceeds. *See* App. Br. 16-17; CW Br. 12. The fact that Inessoft, like Appaloosa, must convince the Court that the Disputed Funds are Gain-on-Sale Proceeds before recovering does not make its interest in this proceeding contingent. To the contrary, Inessoft has a direct interest in the question at the core of the instruction sought by the Trustee regarding the proper categorization of the Dispute Funds and how they "must be allocated," and its interest is further heightened by the breadth of the release sought by the Trustee, which could prevent Inessoft from obtaining relief related to the Disputed Funds in a different forum. Nor is there any argument that Inessoft's request for relief is somehow not ripe. *See* App. Br. 16-17; CW Br. 10. The Gain-on-Sale Proceeds that Inessoft seeks to recover were due nearly a year and a half ago, and the fact that Inessoft must prove two things (*i.e.*, categorization and distribution timing) to recover does not somehow render its claim for past-due amounts premature.

The cases cited by Appaloosa to the contrary are unavailing. In each case, the proposed intervenors' claimed interest in the case was based not on an interest in the claims at issue, but instead on a separate damages claim against one of the litigants. *See, e.g., Compagnie Noga D'Importation et D'Exportation S.A. v. Russian Fed.*, No. 00-cv-632, 2005 WL 1690537, at *3 (S.D.N.Y. July 20, 2005) (party sought to intervene in arbitration enforcement action to pursue separate breach of contract claim against plaintiff in hopes of recovering damages on separate claim out of recovery in original case); *Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) (party sought to intervene in breach of contract action to defend a separate potential indemnification claim by the defendant); *Wash Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990) (party sought to intervene in bilateral breach of contract suit to pursue separate claims for multiple other signatories). Here, Inessoft is advancing the same claim at issue in the action, not a separate claim against one of the parties. The fact that Inessoft has raised an issue of distribution timing does not transform its direct interest in recovering Gain-on-Sale Proceeds out of the Disputed Funds into a contingent or unrelated interest.

### III. APPALOOSA DOES NOT ADEQUATELY REPRESENT INESSOFT'S INTERESTS AND INESSOFT WOULD BE PREJUDICED IF NOT PERMITTED TO INTERVENE

Neither Appaloosa nor CWCAM contest that Appaloosa will obtain tens of millions of dollars in additional recoveries if it can convince this Court to order reimbursement of Realized Losses through distribution of Gain-on-Sale Proceeds as of the date of judgment, rather than as of January 2016. *See* Br. 17 (explaining that Appaloosa stands to recover at least $41 million if Gain-on-Sale Proceeds are distributed based on realized losses existing today; not taking into account millions in additional recoveries Appaloosa stands to gain from its holdings in other Trusts based on the timing issue). Appaloosa's response, supported only by an attorney

affidavit, that it *once held* Class H Certificates—while carefully avoiding any representation to the Court that it *currently* holds those certificates—and might receive a far smaller distribution on those certificates in isolation if Gain-on-Sale Proceeds are distributed as of the January 2016 distribution date, *see* App. Br. 15, does nothing to eliminate Appaloosa's clear incentives to advocate for a more lucrative distribution done as of the date of judgment when considering its current and/or total holdings.  Nor does the fact that Appaloosa and Inessoft have an identity of interests on one issue before this Court (*i.e.*, categorization of the Disputed Funds) alleviate the clear adversity of interest among the parties on another core issue in dispute.  *Contra* App. Br. 13-14.  Indeed, what Appaloosa does not say is far more telling that what it does say.  Appaloosa does ***not*** concede that Disputed Funds held to be Gain-on-Sale Proceeds must be distributed as of the January 2016 distribution date—a concession that could have tipped the scales in favor of its opposition to this motion.  Appaloosa's silence makes clear that it intends to argue precisely the opposite.  Thus, the true motivation for its opposition to Inessoft's intervention is an effort to muzzle a vocal opponent to its plan.

Relatedly, Appaloosa's self-serving assertion that "Inessoft's interests will not be impaired if its motion to intervene is denied," App. Br. 20, is demonstrably inaccurate. Appaloosa's opposition brief appears to concede that the Trustee will distribute the Disputed Funds pursuant to a judgment in this case.  *See* App. Br. 20 ("Once that claim is resolved, and if it is resolved in favor of Appaloosa and the Trusts, ***and if the Trustee subsequently does not distribute the funds to Inessoft's satisfaction***, Inessoft may seek appropriate relief to litigate the distribution issue at that time" (emphasis added)).  However, Appaloosa ignores that the Trustee also seeks a release of all duties "in connection with the Disputed Funds."  Once the funds are distributed and the Trustee is released, there is little Inessoft can do to protect its rights.  Thus, it

7

is imperative that Inessoft be given the opportunity to protect its rights here, where Appaloosa acknowledges the distribution will be adjudicated.

IV. **INESSOFT'S ACQUISITION OF NOTES AFTER THE FILING OF THE PETITION SHOULD NOT PREVENT ITS INTERVENTION**

Finally, CWCAM argues that Inessoft should not be permitted to intervene because it acquired its certificates after the filing of the Petition. *See* CW Br. 8-10. *First*, CWCAM appears to suggest that the claims pursued by Inessoft might be subject to the contemporaneous ownership rule, such that Inessoft would lack standing to pursue relief in this action because it did not own the certificates at the time of the Stuy Town liquidation. *Second*, CWCAM states, in a footnote, that Inessoft's efforts to obtain relief through this proceeding might be subject to a champerty defense. Both arguments are meritless.

In respect of the first argument, CWCAM overlooks the fact that the relief sought by Inessoft in responding to the Petition is enforcement of its contractual rights as a ***current*** certificateholder under the MLCFC 2007-5 PSA to past-due, but yet unpaid, Gain-on-Sale Proceeds. Inessoft has a contractual right to this relief by virtue of its present status and rights as a certificateholder. *See House of Europe I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-519, 2014 WL 1383703, at *13 (S.D.N.Y. Mar. 31, 2014) (holding that noteholder's claim related to enforcement of a CDO indenture provision "is based on [the noteholder's] present status as a noteholder and does not depend on the validity or scope of a claims transfer from its predecessor-in-interest"). Thus, its holdings in January 2016 are besides the point.

The *GSAA Home Equity Trust 2006-2* case is not to the contrary. There, the federal district court in South Dakota held that certain ***derivative*** claims—*i.e.*, claims brought by one certificateholder derivatively on behalf of all certificateholders and the trust itself—could only be brought by a certificateholder that held its investment at the time of the alleged wrongdoing. *See*

8

*GSAA Home Equity Trust 2006-2 ex rel. LL Funds LLC v. Wells Fargo Bank, N.A.*, 133 F. Supp. 3d 1203, 1212, 1227 (D.S.D. 2015). The court was clear that its application of the contemporaneous ownership rule was predicated on the fact that the claims were being brought derivatively, rather than directly, and relied on a long line of precedent in the securities laws context that derivative claims require contemporaneous ownership. *Id.* The relief sought by Inessoft is direct, not derivative. Inessoft is seeking to protect its individual rights as a certificateholder, which are, in fact, directly adverse to the rights of other certificateholders (including Appaloosa). Thus, the contemporaneous ownership rule cited by CWCAM has no application here.

Moreover, the contemporaneous ownership rule has never been applied to block a certificateholder from responding to a trust instruction proceeding like this one, where the Trustee solicits responses from beneficial owners of trust certificates regarding the proper performance of its duties under the governing contractual documents. To the contrary, certificateholders without contemporaneous ownership routinely participate in this type of proceeding in order to protect their contractual rights as current investors. *See In re Trusteeship Created by Am. Home Mortg. Inv. Trust 2005-2*, No. 14-cv-2494, 2014 WL 3858506, at *6-7 (S.D.N.Y. July 24, 2014) (certificateholder who acquired seven years after formation of PSA permitted to seek reformation of PSA to correct drafting error in Minnesota trust instruction proceeding); *see also In re Tropic CDO I Ltd.*, 92 F. Supp. 3d 163, 170 (S.D.N.Y. 2015) ("Under Minnesota procedure, adverse parties need not be named in a petition for trust instructions. Instead, the petitioner must give notice to the trust's beneficiaries, who may then appear as interested parties.").

9

In respect of the second argument, CWCAM's champerty defense is meritless. Inessoft paid several million dollars for the certificates at issue in this case, placing its purchase squarely within the safe harbor provision of Judiciary Law § 489, which excludes from the scope of the champerty statute financial transactions of over $500,000. N.Y. Jud. Law § 489 (McKinney 2017). Because Inessoft's acquisition of its MLCFC 2007-5 certificates unequivocally falls within the § 489 safe harbor, the champerty rules do not apply.

Finally, CWCAM attempts to cast aspersions on Inessoft for supposedly "acquiring the Certificates . . . to join in this litigation for profit," and argues that the circumstances of Inessoft's purchase present "unusual circumstances" counseling against intervention. CW Br. 8. CW's argument ignores the realities of this case, which involves allegations that CWCAM stole more than $600 million from the investors it was hired to protect. Many of those investors were not equipped to engage in litigation with a well-seasoned litigant like CWCAM. The fact that one of those certificateholders decided to sell its investment to Inessoft at a price that incorporated the value of rights that Inessoft might be better situated to protect is hardly a reason to prevent this intervention. To the contrary, Inessoft's willingness to step in and contest CWCAM's misconduct ensures that the parties harmed by that misconduct, including the party from whom Inessoft purchased, are able to share in the anticipated recoveries related to those rights that were undermined by CWCAM's misconduct, even if they are not able to prosecute the claims themselves. Furthermore, there are unquestionably other similarly situated investors that will be benefitted by Inessoft's intervention, whose interests would otherwise be unrepresented in this proceeding.

## CONCLUSION

For the reasons set forth above, Inessoft respectfully requests that the Court grant its motion to intervene.

Dated:   May 19, 2017	ROSS & ORENSTEIN LLC

By:  /s/ John Orenstein
    John Orenstein,
    Harry Niska, admitted *pro hac vice*
    222 South Ninth Street, Suite 470
    Minneapolis, MN 55402
    Tel. 612-436-9802
    Fax 612-436-9819
    Email:  jorenstein@rossbizlaw.com


*Attorneys for Proposed Intervenor*
*INESSOFT, LLC*